We're now going to move to Appeal 21-2346, Robert Panton v. Merrick Garland, and we'll begin with oral argument from Mr. Ward. As we indicated earlier, we'd like to reserve two minutes for rebuttal time, please. Very good. That'll be granted. Thank you. Good morning, Your Honors, and may it please the Court, my name is Michael Ward, and with me today is Chuck Roth from the National Immigrant Justice Center, and Nicholas Chula, who assisted in the defense here, and I represent the petitioner, Robert Panton, on a petition for review of final removal order by the Board of Immigration and Appeals, seeking relief under the Convention Against Torture. Now, there were several significant misstatements and errors in the agency's determinations, but the two most significant, I would say, are the following. One, according to the agency, the reason that Mr. Panton does not want to return to Jamaica is that he has not been there since he was four years old. Number two, that his risk is no greater than that of anyone else in Jamaica. Now, the agency was wrong on both these points. It is not just that Mr. Panton does not want to go, it's that he fears torture and death if deported to Jamaica, and the evidence shows those fears are justified. And the risk to Mr. Panton is specific and far greater than that of the general population, and makes it more likely than not that he would be tortured if he was removed. Now, not only are these statements wrong, but they are indicative of the backwards and circular reasoning employed by the agency. The agency reached its determination that Mr. Panton simply didn't want to return, and his fears were speculative, and based on that determination, overlooked and misread the evidence. And so those are the issues now before the panel. The extent to which the agency... Mr. Ward, before you go into the substance, just a quick question. Is Mr. Panton still in the United States? Yes, he is. Okay. So the issues before the panel now are the extent to which the agency overlooked and did not address key aspects of Panton's claim, and the extent to which the agency misread and misstated his position so significantly that it demonstrated that the agency did not actually hear and reason through his arguments. Again, these errors in statements were fundamental, and as a result, it's impossible to be confident that his claims have been fully understood and analyzed. And so remand is warranted here so that Mr. Panton's claims can actually be heard. So first of all, in terms of the errors in the statements, as we detailed in the briefing, the agency made a number of significant errors that were fundamental to its determination. The agency said that Mr. Panton had been threatened once, when in fact it was three times over a multi-year period. The agency said these threats were resolved quickly, and this ignores the earlier and later threats. The agency really only focused on one. The agency minimized the involvement of two individuals, Mr. Chen and Mr. Johnson, saying they might have been involved with gangs when the undisputed evidence shows that they were in fact involved with gangs, in fact, the same gangs that Mr. Panton would need to seek assistance from if he were to be removed. The agency counsel does not really try to dispute these errors. In fact, it just tries to downplay their significance. And now, not only did the agency misstate and misread certain aspects and arguments, but it also ignored certain evidence and arguments entirely. The government, in fact, admits that the agency ignored key arguments in making its determination, including the following. Mr. Panton's lack of a Jamaican accent, the fact that the Spanglers and the Shower Posses, these are the two Jamaican gangs at issue which Mr. Panton has unfortunate relationships to, are active in the Kingston area where Mr. Panton will reside. The government also admits that the agency overlooks that Mr. Panton's arrival in Jamaica will be announced and made public to everyone, including these gangs that run these territories, and that there are public documents touting Mr. Panton's law-abiding life. The government also admits that the agency overlooks that the gangs control access to the essential services in Jamaica where Mr. Panton would be, and that he would necessarily need to submit himself to the will of these gangs. Mr. Ward, so one of the things that the BIA and the immigration judge notes is the lack of evidence of what I would say recency. That is, Mr. Johnson's death was in 2013, the last time Mr. Panton and Mr. Chen produced a record together was 1990s, and so where in the record is there any indication of any recent threats or the basis for Mr. Panton to believe that the Shower Posse or the Spanglers cared all about him now? That's a great question, Your Honor, and I'm glad you brought that up because one of the fact that these posses and organizations have very long memories. There's testimony that Mr. Panton explained that the gangs in Jamaica are always seeking people out, and they are always looking for revenge, and so the passage of time matters much less than... But that strikes me as a very kind of general statement than that would apply to anyone in similar situations. I was wondering if you could point me to anywhere in the record that the gangs are interested in Mr. Panton or the facts of this particular case specifically. Certainly. So for one indication, you mentioned Mr. Johnson, who was murdered. He was actually murdered 23 years after the conspiracy was broken up. So that's certainly an indication of the long memories that these gangs have that are at issue in this case. We're talking about Mr. Panton, you know, having been threatened as short as 20 years ago, and in fact there was another incident in the record that he testified to that was actually after that. So we're talking about Mr. Panton being threatened less than 20 years ago, and at the same time we have criminal organizations that have sat and waited 23 years to murder an individual for their acts. So I think both of those are strong indications of the fact that just because there has been a passage of time, we actually have evidence of how long these criminal gangs will wait before seeking retribution. And we also have the fact that Mr. Panton is related not just to one criminal gang. Unfortunately, he has relationships through individuals to two warring factions, the Shower Posse and another criminal organization, the Spanglers, both again of which there's testimony showing that they have long memories, and will remember things for quite a period of time and will wait to exact that revenge. And the revenge doesn't just take the form of, you know, something that would fall short of torture. We're talking about significant reprisals, and there's plenty of evidence that the BIA and the agency did actually recognize the severity of these gangs, but unfortunately failed to apply it to the facts of the case and apply what we have termed these long memories of these organizations. So one other point that we did want to note is that the agency didn't just ignore certain evidence and arguments. It also ignores a risk to Mr. Panton entirely, and that is the risk of the police state in Jamaica. The government does not address this argument at all, the fact that the agency overlooked this separate risk. In fact, it attempts to dismiss it as being the same risk as presented by the criminal gangs, when that is absolutely not the case. In fact, Mr. Panton makes clear that there's a separate risk by the police state, that the police state seeks out individuals who have criminal pasts. In this case, Mr. Panton would have a life sentence, and that they will seek to extract revenge, not revenge against these individuals, but they will target these individuals based on their prior criminal activities. This is a different risk. The agency did not address it at all, and so for that reason, this would be a legal error because it completely ignored the evidence put forth by a petitioner, but also makes it impossible for the agency to have considered the aggregate risk to Mr. Panton. When it failed to completely consider one of the risks to Mr. Panton, that of the police state in Jamaica, it's impossible that it considered the aggregate risk from that and from the two individual gangs with which he would be subjected to under daily life. Mr. Ward, would you like to reserve the remainder of your time for rebuttal? And yes, I would. Thank you, Your Honor. Very good. Thank you, Mr. Ward. We're now going to move to argument from the appellee, from Mr. Kelch. Good morning. May it please the court, my name is Greg Kelch, and I represent the United States Attorney General. Mr. Panton does not face a substantial risk of torture in Jamaica. He is not likely to be targeted by members of the Shower Posse for being a government informant in his 1991 conviction because he was not an informant and received a life sentence to prove it. He is not likely to be targeted for the death of Ward Johnson because he was incarcerated when Johnson died. There is no record evidence that anyone blames Mr. Panton for Johnson's demise. He is not likely to be targeted due to having produced music with his cousin, Bachron Chen, back in the 80s, because Chen no longer associates with the Spanglers. There's no record evidence that anyone believes Mr. Panton to be a member of the Spanglers. In short, this claim is entirely speculative. When the immigration judge issues his oral decision at the conclusion of the hearing, he need not, and he cannot, address every piece of evidence, every line of testing, every country report, every possible theory. What he has to do is address the key elements, key aspects of the claim, and that's what the immigration judge did here. He said that there's just no link between these events from long ago and a current risk of harm. As Judge Lee asked, where is the evidence of the current risk? In the typical cat protection case, the applicant is being told from family members back home that people are still looking for him, he's receiving threats over the telephone or social media, that sort of evidence. Here all we have are events that happened long ago, and it's possible, well maybe, maybe somebody might think. As an example, I want to address the issue about the death of War Johnson. As the immigration judge noted at the end of the hearing, this is on page 211 of the record, we don't know why Mr. Johnson was murdered. We don't know who did that and why. That could have been entirely unrelated to the drug distribution conspiracy. But more importantly, there's not any evidence in this record that anyone blames Mr. Panton for it. I mean, Mr. Panton was one of several co-conspirators, and he was incarcerated at the time, so we know he didn't do it. Everyone knows that he didn't do it. There's just no evidence to support the claim that he might be responsible for the death of War Johnson. And I also wanted to address the issue about his fear of the police. I want to point out to the court that this fear of the police is an evolving claim. When he appeared before the immigration judge, his testimony was that his fear of the police was that he had heard from family that a lot of gang members are on the police force. And so therefore, gang members on the police force may come after him in retribution for supposedly being a government informant or doing something else with the gangs. And then when he got to the BIA, he did mention in his brief that there is evidence of extrajudicial killings. That was part of his acquiescence argument. And as you'll note, the BIA did not reach the issue of acquiescence. It's now before this court that we have a new theory, which is that the police may target him believing that he is a gang member. But even that argument must fail. He does not belong to a gang. He is rehabilitated. He's not going to be associating with gangs. He's not going to be selling drugs. There is no substantial risk that the police are going to target him and then that he will also receive extrajudicial killings or torture or other mistreatment that would make him eligible for cat protection. If the court has no further questions, I will just conclude by noting that the key aspect of the cat protection claim, the purpose of cat protection is to protect people from torture in their home countries. That is the fundamental question. This record does not have that evidence that Mr. Panton faces that risk. And our position is that the agency issued an appropriate decision that addressed the key aspects, the key risks that he presented to the immigration judge. We would respectfully ask that you deny this petition for review. Thank you. Thank you, Mr. Couch. Now we'll move back, Mr. Ward, to you for rebuttal argument. We'll give you two minutes. Thank you, Your Honor. I'd just like to address a few points that were raised by government counsel. One statement was that we don't know why Mr. Johnson was murdered when, in fact, the testimony in front of the immigration judge that was elicited by the agency's attorneys themselves was that the only reason he could possibly have been murdered, the only reason that anyone could conceive of, was that he was an informant and that was elicited by the agency's own attorneys. So I did want to correct that, and that is in the record. And that government's argument was that the agency need not address all aspects. We agree with that, but they do need to address the key aspects of the claims, as even counsel just recognized. And in this case, it is clear that the agency did not address one of the risks, the risk posed by the police state. I think it's a bit of a mischaracterization to say that it was only raised in the context of Mr. Panton being considered a gang member. I think any individuals who are, the evidence shows that any individuals who have a background or a criminal history or a criminal conviction would be targeted by the police state. And I don't think the government tries to address the fact that it wasn't addressed by the agency. I think they acknowledged that it wasn't addressed. So again, we have a whole category of risk that was not addressed by the agency. That alone constitutes legal error, but also makes it impossible for them to consider the aggregate risks to these individuals. And then I think at the same time, the government really concedes that many of the arguments that we pointed out were not considered by the agency. Again, they tend to focus on just a few items and ignore the ties between him and Mr. Johnson, the shower posse, the ties between him and Mr. Chen and the Spanglers, his cooperation with the authorities and how that plays with the sources of risks, including these criminal gangs. So, as I see my time has run out, I would just like to restate our request that the and find that the ordinary remand rule applies here, which it does. Thank you very much, Mr. Ward. Thank you to your fellow counsel and thank you as well to Mr. Couch. The case will be taken to our advisement.